Thank you. My name is Ben Coleman. I represent Mr. Hudson. I'll watch the clock and attempt to save a minute or two for rebuttal. If the court, unless the court had a different preference, I was going to start off with the issue that was raised by the court's order of a week ago, and that is whether the case should be deferred pending the Supreme Court's rulings in Lawford v. Cooper and Missouri v. Frye. Obviously, I think that's a very discretionary decision, and I can certainly understand if the panel wants to defer a decision to see what the Supreme Court does. I'd offer a couple of suggestions about why perhaps that should not happen, although I certainly understand if that's what the court wants to do. The first is that it's my understanding that both of those cases did not make it onto the argument calendar for this term, so they're going to be kicked over until next October for argument, which means we won't have a decision in those cases probably for approximately a year, give or take a couple of months. So they'll be a fairly long deferral of submission given those circumstances. Also, one of the cases, Lawford v. Cooper, is in the context of a 2254 petition, so the AEDPA standard of review governs that case, so the Supreme Court may not actually get to the ultimate merits in that case. It may just be determining whether there is clearly established Supreme Court precedent in this area, and obviously we're not in the 2254 context, we're in the 2255 context. This is a federal case. The Missouri v. Frye case is a direct appeal from a state court, so the AEDPA standard of review doesn't apply in that case, so the Supreme Court may actually get to the actual merits on more of a de novo standard. But still, because that case arises from a state court, it's a little bit go forward and decide this case based on the non-circuit precedent, which I think is in agreement with most of the other circuits, which is that there is an ineffective assistance of counsel claim under the Sixth Amendment in this particular context, and that if you're able to show it, that the appropriate remedy is reinstatement of the plea offer. And so I'd urge the Court to continue to follow this Court's precedent in that regard. If the Court is going to defer submission, I would just simply ask that, if the Court felt it was appropriate, that we be allowed to submit briefing once the Supreme Court decides those two cases. That being said, I'll turn to the merits. It's our position that Mr. Hudson has either satisfied both prongs of the Strickland test, or at the very least was entitled to an evidentiary hearing on his claim. The district court basically didn't really get to the deficient performance prong of the Strickland test. It just sort of jumped to the prejudice prong. It's our position that the deficient performance prong was satisfied. Mr. Hudson's attorney did submit a declaration where he conceded that he informed Mr. Hudson that the statutory maximum penalty for his offense was 10 years. Let me just focus on the prejudice prong for a moment. He has to show that, but for it, he would have pled guilty. I think there was a reasonable probability that he would have pled guilty. Okay. And the judge who sat through the trial where Hudson testified found him astonishingly uncredible and said that he hadn't really said that he would have pled guilty, but even if he had said it clearly and unequivocally in his petition, he wouldn't believe it. So I guess my question is, what's the point? Well, I think that I could understand if it was just simply Mr. Hudson's declaration and nothing else. Yeah, no, but let's assume that you do look beyond just his declaration. You say, okay, it's pro se. We'll look at everything he's thrown in. And so he said it. But the district, the judge said, I basically don't believe anything he says or will say. So even if he said clearly, I wouldn't have gone to trial. I don't believe him. Well, I think that in this particular case, there are other facts in the record and circumstances that actually corroborate his claim or that indicate that he, there was a reasonable probability that he would have accepted the plea. And what I would offer to the court is this. Number one, he actually had signed and filed the plea agreement. He had showed up at the guilty plea hearing. He was about to hand out the guilty plea. And then he backed out. So this isn't somebody who just wasn't considering pleading guilty at all. That's number one. Number two is that his lawyers actually submitted a declaration. One of his lawyers submitted a declaration stating that, A, she wasn't a C, that Mr. Hudson specifically advised her that he had been told that he should plead guilty. And he agreed with that advice. So it's not just Mr. Hudson who's saying, you know, after the fact, after perhaps giving testimony at a trial that wasn't very credible. It's not just him, after the fact, saying it. We have a lot of circumstances. But counsel, do we have anything contemporaneous with the trial, with the plea agreement that he was relying on the 10-year bad advice he got from his lawyer? I don't think there's anything in that record, is there? In fact, there's a lot of other evidence that suggests that he had different reasons for not wanting to accept the plea. He commented to his attorneys on specific intent. Right. Well, I don't think there's anything contemporaneous, which was the question. I do think that there are things in the record that at least should, at the very least, should have triggered an evidentiary hearing on this. And that is that, number one, I think a reasonable person – let's try to think what a reasonable person would do in his circumstances. If he is told he's getting an offer of 7 to 9 years, and that the maximum is 10 years, frankly, I'd probably turn down the offer. There's not much of a difference between the stat max of 10 years and the offer of 7 to 9 years. But had he actually known that for one count, the statutory maximum was 30 years, obviously, all the counts could have been stacked. He could have gone to prison three times, three lives over. I mean, it was like hundreds of years in custody. And that his guideline range was in the 20-year range. A 7 to 9-year offer was actually a very reasonable and attractive offer that the government made. And I think he would have – I think a reasonable person would have considered the sort of – the calculus in deciding what to do very differently had he been given the correct advice. So I think, at the very least, that those types of facts suggest that an evidentiary hearing should have been held. In addition, Sloan Hillier, who wasn't the attorney who gave the 10-year advice, but was the other attorney, she put in her declaration that she felt that Mr. Hudson turned down the deal at least in part based on things that Evans told him. Now, it's not clear exactly what that is, but that also kind of suggests that maybe this advice factored into it. I do agree with the Court that there seems to be clear evidence in the record from the declarations that Mr. Hudson thought he had a chance at winning that trial. But just like any litigant, whether it's a civil case or a criminal case, you weigh the chances that you think you have at winning a trial versus the exposure that you have if you lose and the deal that's on the table, and you try to make a correct, reasonable, rational judgment as to what to do. And in this case, he was not advised of the exposure – correctly advised of the exposure after trial, and he wasn't able to make that calculus. And I think, at the very least, there should have been an evidentiary hearing where he could have offered more facts. I see I have about two minutes for Roboto and then Lesley. Just a minute, though. In her affidavit, Hillier said, Hudson at all times told me that he was proceeding to trial because he thought he could win on the intent issue. And then she goes on that he told her that Evans told him he could win at trial. And at least one time, Hudson expressed his belief that he was innocent of the specific intent of the fraudulent requirement. He gets up and he testifies at trial. He says he didn't do it. He's not guilty. The judge didn't believe anything he said. And he talked, don't you think, Ms. Hillier's word for the motive for his going to trial. We agree. He went to trial because he thought he could win. But we also have Sloan Hillier specifically saying that he wanted to – he wanted a good deal. He wanted to plead guilty, that she was specifically hired to do it. What is the district judge going to do? He saw the guy. He heard everybody. He – you know, he sees Hillier. He sees Evans. He sees your client. He says, your client's a liar. He's trying to blow it by me. What more would a hearing do for this judge? He was – he's almost a witness instead of a judge. Well, that's why we think it should be sent for a hearing to another judge. We've made that request under the Second Circuit case that we cited. But I don't think he has seen their testimony on this – on these facts. He's just read declarations. He – no one has testified. He hasn't had a chance to evaluate anybody's live testimony. We think that there should be at least a hearing before another judge. And I still think that the declarations at least create enough of a reasonable inference that Mr. Hudson would have taken the deal had he known properly what he was looking at after a trial. I've got about 30 seconds. Thank you. Okay. Thank you, Mr. Coleman. Ms. Lindsey. May it please the Court. My name is Ellen Lindsey. I'm an assistant U.S. attorney in Los Angeles. And I was representing the government at the trial stage as well. And, Your Honors, obviously the government's position is that you don't need to reserve this case for the Supreme Court to decide the two cases it's taken on because the government believes that this court does not need to get to the remedy stage because defendant simply has not shown – he has not met the Strickland standards. He hasn't shown ineffectiveness and he hasn't shown prejudice. The reason that the government believes that he hasn't shown ineffectiveness is related to the Martini case that the government cites. And that is that Evans, at the time he made this throwaway remark that the defendant is now, only now, clinging onto to attempt to show that he should have a new trial, he was retained only and solely for the purpose of bail. And defendant was represented at the time by Kiana Sloan-Hillier who was acting in an advising him properly, or at least as far as the government had stated, which was my error to say in the plea agreement that the stat max was 15 years because it was right when mail and wire fraud changed from a five-year to a 20-year stat max. So I had taken it as the five-year stat max with the additional time for the penalty enhancement of 15 years. So defendant was receiving effective assistance of counsel from Kiana Sloan-Hillier. She couldn't remember if she specifically had – she couldn't remember the moment of specifically telling Mr. Hudson when she discussed the plea with him about the stat max, but naturally would have. And again, as Your Honor stated, he never, Hudson never, ever brought up to her anything about the stat max being 10 years, and why don't I just go to trial and throw the dice because the consequence is only 10 years. He was very specific in talking to Kiana Sloan-Hillier and saying, Mr. Evans says I can win on intent to defraud. And that was the judge wasn't able to see any of the affiants discussing or testifying about what they've stated in the 2255 opposition, but he certainly presided over the trial and he saw the incredible manipulativeness of this defendant playing one attorney off the other. He had four attorneys and it was a circus and he was trying to make it a circus and Judge Walters certainly saw that and observed the defendant's demeanor when he showed up to plead but wouldn't plead, observed him throughout trial, as Your Honor said, lying his brains out. Counsel, the District Court finds that Mr. Hudson was not credible, but as I read the District Court's decision here, he finds he's not credible because of his testimony at the trial, not because of his testimony about the plea deal. Am I misreading what the District Court said? I think that the District Court said I've seen this defendant, I've observed him and he's simply not credible. Is it permissible in our system for the District Court to say I saw you lie at trial about your criminal charges and therefore I don't believe anything that you're saying today about conversations you had with your lawyers? Well, I don't think that's exactly what the Court was saying. I think the cases say that a district judge who has presided over a trial and seen the defendant testify is entitled to consider his or her observations of the defendant along with everything else. And I think what Judge Walter was saying is in light of everything that I saw, including the defendant's incredible testimony, and in light of the debt of $1.87 of the District Court's order, thus based on Mr. Evans' declaration, that would be one thing. And two, the court's finding that the petitioner's testimony at trial was false. This court finds the petitioner's claim that Mr. Evans failed to inform him of the second plea offer is not credible. Now, is that a logical connection? The District Court, a permissible inference the District Court can make, that you testified falsely at trial and therefore I don't believe what you're now telling me about what your lawyer told you. Well, I think put that way, this is why the government stated in its 2255 opposition that it would be a good idea just to hold the hearing. But I think Judge Reimer is correct in that really given the entire record, given everything that Judge Walter observed, that it really would have been pointless. And I think it's not just Evans' declaration, and it's not just defendant that he observed at trial, but it's also Sloan-Hillier's declaration, and many of the myriad other facts that demonstrate that the defendant was not being truthful. And I think one of the strongest facts is that in his first, it's simply the mention of this 10-year statments was a throwaway that Mr. Evans had said to the defendant when they were discussing bail. And it never came up again. And I think that the district judge is entitled to rely on that for Mr. Evans' declaration. Look, this never came up again. It was just a throwaway remark, and the defendant was focused on intent to defraud. So I think when you read the district judge's order, he is taking into consideration not just that the defendant is a liar and a manipulator, but what Mr. Evans said, which was it just never mattered. And then you have Kiana Sloan-Hillier stating it never came up with her. He was angry at her. He was fighting her over the plea. But it was never about the issue that, look, if I throw the dice, I'm only gonna get ten years. It was always, I can win on the intent issue. And he had notes, and he had put together strategies and everything. And he presented this to Sloan-Hillier. And if the ten years had been important, that would have been in there too, but it never was. It was all about intent to defraud. And I think that the trial court and Judge Walter can bring all of that to bear. I think it's very important that in the first version of the 2255 petition, the defendant didn't even mention the ten years. He was, and also this court should recall that when he filed the 2255, there were numerous issues. This was just one issue that he raised. He was raising numerous issues about all four of his attorneys and playing them off of each other, et cetera. So this was not the focus of the defendant's 2255. It's really the only issue that had enough merit to warrant a certificate of appealability. But the fact that he didn't even mention it, it's just, having been present myself and the district judge and seeing the whole process and the whole progress of everything with this defendant, it's clear that it really was a throwaway remark that the defendant is only now using to get a windfall that he's not entitled to. And if Your Honors have no further questions? I don't think we do. Thank you, Your Honors. Ms. Lizzie, Mr. Coleman. I've got a few seconds. The first thing is, assuming his trial testimony was false and unbelievable, we're obviously conceding that he should be punished for that and that he can get the obstruction enhancement. But I don't think it's fair to use that against him and to deny him an evidentiary hearing on his 2255 claim. He should at least have the ability to testify to 2255 at an evidentiary hearing. The other thing, just, I wasn't there, I wasn't the trial attorney, I didn't see the trial. But from my review of the record, I don't see Mr. Hudson as being this extremely manipulative man who's playing attorneys off each other. What I understood from the record is that he was indicted in January of 04. This, he had two lawyers, I think, that had state court practice that he was familiar with at the beginning, and they didn't have federal experience. So he hired Sloan Hilliard. Sloan Hilliard comes in, he's trying to negotiate a deal, and the judge is jamming him up for trial. In a fraud case, this case was indicted in January of 04, the judge was insistent on an April of 04 trial date, three months, which for a federal case, fraud case, is actually a pretty quick turnaround. And he, so he has this, he gets this other guy, Evans, who says he's a trial attorney, because Sloan Hilliard is insisting to him, I don't know how to try a federal case. I'm not going to try your case. So you've got a man who has hired his federal lawyer who's telling him, I'm not confident to try a federal jury trial, so he gets another lawyer. I don't see this as a man who's trying to be manipulative and play one lawyer off the other. He's doing his best to respond to the situation he had. Thank you.
judges: Quist, Rymer, Bybee